UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DANA CLARK,

    Plaintiff,

v.                           Civil Action No. 2:20-cv-00720

DR. DAVID PROCTOR and
JOHN/JANE DOES,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending is defendant Dr. David Proctor's ("Dr. Proctor") motion for summary judgment, filed October 8, 2021.

### I. Background

On November 26, 2018, plaintiff Dana Clark ("Clark"), an inmate at Huttonsville Correctional Center ("Huttonsville Correctional"), was attacked by three other inmates. Clark Dep. 14-15, ECF No. 45-6.[1] Clark suffered, inter alia, a broken left jawbone. Id. at 16; see also Chart Notes, ECF No. 45-3. A licensed practical nurse at the facility examined Clark for his injuries and passed her observations to Dr. Proctor. See Chart Notes. Dr. Proctor was the medical director and on-site physician for Huttonsville Correctional. Proctor Dep. 8, ECF

---

[1] Clark is no longer incarcerated. Clark Dep. 10.

No. 45-4. Even though Dr. Proctor was Clark's treating physician, he never personally examined or saw Clark. Id. at 8-9, 78-79; see also Clark Dep. 27.

On November 26, the day of the altercation, Dr. Proctor prescribed pain medication for three to five days, prescribed a soft diet for seven days, and ordered an x-ray of Clark's jaw, which was performed the next day. Proctor Dep. 31, 33, 36, 78. On November 28, Dr. Proctor reviewed the x-ray and saw that Clark had a broken jaw and needed to see a specialist. Id. 32-33, 36. Dr. Proctor, however, did not believe the break was an emergency. Id. at 18-19; see also id. at 23-25, 31-33, 38. On November 29, Dr. Proctor held a "collegial" discussion with Huttonsville Correctional's health services contractor, Wexford health Sources, Inc. ("Wexford"), during which the contractor approved Clark's referral to a specialist. See Chart Notes.[2] An appointment with the specialist for December 6 was made that day by Sherry Sprinkel ("Sprinkel"), Dr. Proctor's administrative assistant. See id.; see also Sprinkel Dep. 6, ECF No. 45-5.

The specialist ordered a CT scan, which was scheduled December 17. See Chart Notes. Dr. Proctor received the CT scan

---

[2] A "collegial" is a conference with Wexford for approval of referral for specialist services. See Proctor Dep. 37.

results that day and, on December 19, sent the results to the specialist.  See id.; see also Proctor Dep. 55-56.  On December 20, the specialist received the results and decided to operate the next day.  See Chart Notes.  After the operation, the specialist prescribed pain medication and a purée diet.  See id.

Clark testifies that, because of his broken jaw, he had trouble eating, drinking, and talking; suffered severe pain; and could not sleep.  Clark Dep. 17, 31.  Clark states that he was on a purée diet for six weeks and could not eat solid foods until about one month after his surgery.  Id. at 19-20.  Clark also asserts that, even though he asked for pain medication, he did not receive pain medication until "a couple weeks" later and he never received ice.  Id. at 23.  However, a contemporaneous grievance filed by Clark states that he received pain medication after the injury, but for only one week.  Grievance, ECF No. 45-7.  Generally, Clark complains that the time between his injury and surgery was too long and has contributed to ongoing pain in his jaw.  See Clark Dep. 25-26.  Clark also claims that the specialist told him that he should have seen a specialist sooner.  Id. at 17.  It is noted that Dr. Proctor obtained approval to refer Clark to a specialist three days after the injury, and his referral that same day resulted in the appointment with the specialist being fixed for December 6.  It

is further noted that the specialist requested a CT scan at the appointment, which Dr. Proctor ordered on December 7 and which Dr. Proctor testifies was not authorized by Wexford until December 11, when Sprinkel scheduled the procedure.  See Chart Notes; Proctor Dep. 54.

Wexford's guidelines for oral and maxillofacial surgery provide that a broken jaw is an urgent condition requiring referral for oral surgery and "for reduction and immobilization."  Surgery Guidelines at 2, ECF No. 45-1.  Dr. Proctor testified that he was not familiar with those guidelines.  Proctor Dep. 19-20.  As noted, Dr. Proctor did not believe Clark's broken jaw was an emergency.  Id. at 18-19.  Nor does Dr. Proctor believe there were undue delays in Clark's treatment.  See, e.g., id. at 29, 67.  In particular, Dr. Proctor testifies that the specialist made the initial December 6 appointment date, id. at 29, 41-42; that he did not immediately order a CT scan himself because he believed that decision should be left to the specialist, id. at 60; and that the four-day lapse between the specialist's order of the CT scan and the scheduling of the CT scan was a result of waiting on Wexford to authorize the procedure, id. at 54.

Sprinkel testifies that her job duties included submitting Dr. Proctor's orders to Wexford for approval and, if

approved, would call providers to make appointments for treatment. Sprinkel Dep. 6. Sprinkel notes that if an order were urgent, Dr. Proctor would tell her that it was urgent or write "urgent" on the order. Id. at 6-7. In this case, Sprinkel asserts that Dr. Proctor did not tell her Clark's appointments were urgent or write "urgent" on Clark's orders. Id. at 7. Sprinkel states that Clark's treatment schedule could have been "sped up" had Dr. Proctor noted that Clark's treatment was urgent, in the sense that she would have stayed past close of business to perform some tasks insofar as she could not perform those tasks during normal business hours, like forwarding the CT scan results to the specialist. Id. at 25, 31-32.

Clark filed this case in this court on October 30, 2020, invoking the court's federal question jurisdiction under 28 U.S.C. § 1331. See Compl., ECF No. 1. Clark advanced two counts against Dr. Proctor and John/Jane Does: (1) a claim under 42 U.S.C. § 1983 for deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment (Count I) and (2) a common-law claim for intentional infliction

of emotional distress (Count II). Id. ¶¶ 10-20.[3] Now, Dr. Proctor seeks summary judgment on both claims.

## II. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

A party is entitled to summary judgment if the record, as a whole, could not lead a rational trier of fact to find for

---

[3] Clark also advanced the same claims against Sprinkel, Wexford, and Kim Paton. See Compl. Clark voluntarily dismissed all three defendants from this case. ECF No. 46. Additionally, insofar as it appears Clark has not identified any John/Jane Doe defendants, Clark's claims against such John/Jane Does are dismissed without prejudice.

6

the non-moving party.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  The nonmoving party bears the burden to show that there is a genuine issue of material fact for trial.  Id.

### III. Discussion

**A. Section 1983**

Section 1983 provides a private right of action to individuals whose rights under the United States Constitution have been violated by another acting under color of law.  Hafer v. Melo, 502 U.S. 21, 27 (1991).  Section 1983 states as follows, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). "To that end, a prison official's 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "To state a claim under Section 1983 for deliberate indifference to serious medical needs, a prisoner must show that he had a serious medical need [objective prong], and that officials knowingly disregarded that need and the substantial risk it posed [subjective prong]." DePaola, 884 F.3d at 486; see also Scinto, 841 F.3d at 225.

Relevant here, the Fourth Circuit suggests that a broken jaw and accompanying pain are sufficiently serious to constitute an objectively serious medical need. See Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 104 (4th Cir. 1995). Indeed, the court finds it indisputable that, viewing the evidence in his favor, Clark's broken jaw and accompanying pain were a "condition 'diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" DePaola,

884 F.3d at 486 (quoting Heyer v. U.S. Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017)). The only factor at issue, then, is the subjective prong of Clark's deliberate indifference claim.

For a deliberate indifference claim founded on delayed treatment for a serious medical need, "the subjective prong requires proof of the official's 'actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction.'" Scinto, 841 F.3d at 226 (alteration in original) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)). In addition, the delay in treatment must cause "some substantial harm to the patient," such as an exacerbation of the patient's injury or an unnecessary prolonging of the patient's pain. Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018) (noting that this view is "consistent . . . with the precedent of other courts of appeals"). Importantly, deliberate indifference by a prison official "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Scinto, 841 F.3d at 225 (quoting Brice, 58 F.3d at 105)). It follows that medical malpractice or negligence is not enough, Wynn v. Mundo, 367 F. Supp. 2d 832, 837 (M.D.N.C. 2005), although a plaintiff does not need expert testimony to

establish a substantial risk of harm when the risk "would be apparent to a layperson," Scinto, 841 F.3d at 230.

In this case, Clark's claim of deliberate indifference by Dr. Proctor appears to be that Dr. Proctor knew his condition was urgent but failed to instruct his administrative assistant to place an urgent referral to a specialist, thereby prolonging his pain, delaying his surgery, and allegedly causing ongoing jaw pain. See Clark Resp. 1-3, 5, 9. Clark also contends that Dr. Proctor's delay of two days, from December 17 to 19, in forwarding the CT scan results to the specialist was evidence of his deliberate indifference. See id. at 3. In addition, Clark has complained that he did not receive pain medication from about seven days after his November 26 injury to his surgery on December 21. See Grievance.

Viewing these facts and drawing all inferences therefrom in Clark's favor, Clark has failed to demonstrate a triable claim under Section 1983. Assuming Dr. Proctor acted wrongfully, his failure to tell his assistant that Clark's referrals were "urgent" and to quickly forward the CT scan results to the specialist earlier amounts to no more than negligence. Dr. Proctor's conduct certainly did not rise to a level akin to criminal recklessness required to prove a deliberate indifference claim. See generally Model Penal Code §

10

2.02(c) ("A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."), cited by Farmer v. Brennan, 511 U.S. 825, 839 (1994) (affirming the criminal recklessness standard for deliberate indifference claims). Moreover, Clark has not adduced any facts to show that Dr. Proctor subjectively appreciated that his failures posed an excessive risk to Clark's health.

Other courts have granted summary judgment on delayed treatment deliberate indifference claims under similar facts. Cf., e.g., Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); Hernandez v. Keane, 341 F.3d 137, 145-47 (2d Cir. 2003); Shuler v. Edwards, 485 F. Supp. 2d 294, 299 (W.D.N.Y. 2007); Scott v. Coleman, 439 F. App'x 783, 784-85 (11th Cir. 2011); Martin v. Hedgpeth, No. C 12-3771 YGR (PR), 2014 WL 4756597, at *7-8 (N.D. Cal. Sept. 24, 2014); Ali v. Corr. Med. Servs., Inc., No. DKC-10-1676, 2011 WL 4352001, at *9-10 (D. Md. Sept. 14,

2011); cf. also Franco-Calzada v. United States, 375 F. App'x 217, 220 (3d Cir. 2010) (affirming sua sponte dismissal of pro se complaint); Guess v. Holloman, No. 05-CV-273-JBC, 2005 WL 1972589, at *2 (E.D. Ky. Aug. 15, 2005) (sua sponte dismissal of pro se complaint). The record as a whole could not lead a reasonable jury to find that a twenty-five-day period between Clark's injury and surgery, only a limited portion of which could rationally be attributed to Dr. Proctor's failure to tell his assistant about the injury's "urgent" nature or his failure to forward the CT scan results for two days, was "cruel and unusual" in violation of the Eighth Amendment. Clark has accordingly failed to adduce facts demonstrating a genuine issue of whether Dr. Proctor was deliberately indifferent to his serious medical needs. Summary judgment on Clark's Section 1983 claim is granted.

   B. Intentional infliction of emotional distress

   To prove intentional infliction of emotional distress ("IIED") in West Virginia, a plaintiff must establish four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result

>from his conduct; (3) that the actions of the
>defendant caused the plaintiff to suffer emotional
>distress; and[] (4) that the emotional distress
>suffered by the plaintiff was so severe that no
>reasonable person could be expected to endure it.

Syl. Pt. 3, Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419 (W. Va. 1998).

The Supreme Court of Appeals of West Virginia directs trial courts "to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress," that is, "[w]hether conduct may reasonably be considered outrageous." Syl. Pt. 4, id. As guidance, the Supreme Court of Appeals describes tortiously outrageous conduct as being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Zsigray v. Langman, 842 S.E.2d 716, 727 (W. Va. 2020) (quoting Tanner v. Rite Aid of W. Va., Inc., 461 S.E.2d 149, 157 (W. Va. 1995)). By contrast, "conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous

conduct." <u>Courtney v. Courtney</u>, 413 S.E.2d 418, 423 (W. Va. 1991).

As noted above, Dr. Proctor's conduct amounted to negligence, at most. Inasmuch as IIED cannot be founded on merely negligent conduct, Clark has failed to demonstrate a triable claim of IIED against Dr. Proctor.

Moreover, the second element of IIED's recklessness component -- "acted recklessly when it was certain or substantially certain emotional distress would result" -- is virtually parallel to the criminal negligence standard under Section 1983 deliberate indifference, discussed above. Inasmuch as Clark failed to adduce evidence to meet that standard, Clark has also failed to show a triable claim that Dr. Proctor acted with the requisite intent or recklessness for an IIED claim. Summary judgment on Clark's IIED claim is therefore granted.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that Dr. Proctor's motion for summary judgment be, and hereby is, granted.

The Clerk is requested to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: November 18, 2021

John T. Copenhaver, Jr.
Senior United States District Judge